M. K. Nagle, Appellee, v. J. L. Hanson Company, Appellant.

Gen. No. 34,908.

Opinion filed June 22, 1931.

OTTO SCHUSTERMAN, for appellant.

HAROLD L. FEIGENHOLTZ, for appellee; SIDNEY RUBIN, of counsel.

Mʀ. Pʀᴇsɪᴅɪɴɢ Jᴜsᴛɪᴄᴇ O'Cᴏɴɴᴏʀ delivered the opinion of the court.

Plaintiff, the indorsee of a promissory note, brought suit against the defendant maker, to recover the face value of the note, $1,000, with interest thereon. The defendant filed a plea of the general issue and a number of special pleas, alleging that plaintiff was not an innocent purchaser for value, that plaintiff was not a holder in due course, and further, that the note was without consideration. The defendant denied that it had executed the note and averred that at and before the time of the execution of the note, and ever since, the payee of the note was indebted to the defendant in the sum of $1,635.02. There was a jury trial and at the close of all the evidence a verdict was directed in plaintiff's favor for $1,197.50. Judgment was entered on the verdict, and the defendant appeals.

The record discloses that on August 15, 1927, the defendant, by its president, executed its note for $1,000 payable "Ten days sight after date" to the order of L. A. Schwebs with interest at the rate of six per cent per annum. At that time the payee was in the employ of the defendant.

Plaintiff testified that the payee of the note, Miss Schwebs, was her cousin and that "about the latter part of 1927, I believe in November," the payee of the note gave the note to plaintiff in payment of "a little over $1,000" which plaintiff had theretofore loaned her. The evidence further shows that on January 8, 1928, plaintiff, through her bank, presented the note to the defendant and demanded that it be paid ten days thereafter or January 18. Payment being refused the suit was brought.

Defendant offered evidence tending to show that the president of the defendant company, who signed the note on behalf of the defendant, was without authority to do so, and that at the time the note was made the

payee of the note was indebted to the defendant in the sum of more than $1,600. Further evidence was offered tending to show that the plaintiff was not a holder in due course, but upon objection the evidence was excluded.

The defendant contends that the judgment is wrong and should be reversed because the execution of the note by the defendant was denied by verified plea, which cast the burden on plaintiff to prove the execution. The defendant produced a witness who testified that the note was signed by the president of the defendant company. We think this was prima facie proof of the execution of the note. It is a general rule of law that the president of a corporation, in the absence of proof to the contrary, is presumed to have authority to execute contracts on behalf of the corporation. *Quigley v. Macqueen,* 321 Ill. 124; *Anderson Transfer Co. v. Fuller,* 174 Ill. 221.

A further point is made that the proof failed to show that plaintiff was a holder in due course within the meaning of section 52, Cahill's St. ch. 98, ¶ 72; and the argument is that the evidence shows plaintiff acquired the note—which was dated August 15, 1927, and which was due ten days thereafter—in November, 1927, when the note was long past due. Obviously, if plaintiff acquired the note after it was due, she would not be a holder in due course, but the note was not due ten days after its date but was due and payable on ten days sight after the date of the note. The note reads, "Ten days sight after date we promise to pay." While this is worded rather awkwardly, we think it means that the note would be due and payable ten days after it was presented to the defendant. The evidence shows that it was presented on January 8, 1928, so that it would become due and payable, if the presentation were in due time, on January 18. Section 4, Cahill's St. ch. 98, ¶ 24. But we are of the opinion

that whether the note was presented to the defendant within a reasonable time was a question of fact for the jury. At least all the evidence should have been admitted to show all of the circumstances under which the note was made and delivered to the payee and any further circumstances that might throw light on the transaction between the payee and the plaintiff. Sections 53, 58, 59 and 192, Cahill's St. ch. 98, ¶¶ 73, 78, 79 and 215. These sections provide: (53) "Where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course." (58) "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." (59) "when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course." (192) "In determining what is a 'reasonable time' . . . regard is to be had to the nature of the instrument, . . . and the facts of the particular case."

Section 4 of the same chapter, Cahill's St. ch. 98, ¶ 24, provides that "An instrument is payable at a determinable future time, . . . which is expressed to be payable: 1. At a fixed period after date or sight." In the instant case we construe the note as being payable ten days after sight—after it was presented to the defendant after date. And since section 53 above quoted provides that where an instrument payable on demand is negotiated an unreasonable length of time after it is due, the holder is not deemed to be a holder in due course. And section 192 provides that what is an unreasonable time must be determined from the facts of the particular case. Here the note was dated August 15 and was due and payable ten days after sight. It was not negotiated to the plaintiff until the

latter part of November—more than three months thereafter. The facts sought to be shown by the defendant on the trial might reasonably tend to show that when plaintiff took the note she took it at her peril. *In re Estate of Philpott,* 169 Iowa 555; *Consiglio v. Longhi,* 205 Ill. App. 441; Brannon's Negotiable Instrument Law, page 407.

In the *Philpott* case, an action was brought on two promissory notes dated June 12, 1911. The defense interposed would have been good against the payee of the note, and the question was whether the owner of the note was a holder in due course. The note was payable "on or before *four*——— after date," and plaintiff contended it was payable on demand. The court said, p. 557: "Adopting for the moment the plaintiff's contention at this point, and reading the note as payable on demand, another difficulty confronts him. Upon the negotiating of such a note an unreasonable length of time after its issue, the holder is not deemed a holder in due course. Sec. 3060–a53. In this case the date of issue was June 12, 1911, and that of negotiating January 18, 1912. Under the authorities, a reasonable time for the negotiating of a demand note is rather brief. Its dishonor is not long delayed. In the following cases, respectively, two days, seven days, and thirty days were held to be a reasonable time: *Field v. Nickerson,* 13 Mass. 131; *Thurston v. McKown,* 6 Mass. 428; *Ranger v. Cary,* 1 Metc. 369.

"In the following cases respectively, two months and a half, three months and a half, and eight months have been held beyond a reasonable time and sufficient to dishonor a demand note: *Losee v. Dunkin,* 7 Johns. (N. Y.) 70; *Stevens v. Bruce,* 21 Pick. 193; *Ayer v. Hutchins,* 4 Mass. 370; *Bank v. Jenness,* 2 Metc. 288.

"There is, however, no definite rule to be applied, and among other elements 'the facts of the particular case' are to be considered. 3060–a193. It is clear,

therefore, that the defendant was entitled to go to the jury on this question if upon no other.'' In Brannan's Negotiable Instruments Law, page 407, the author, after discussing sections 53 and 193 (192) of the Negotiable Instruments Law, says: ''A demand note, negotiated an unreasonable time after its date, proclaims to all the world, 'I have been dishonored. Take me at your peril.' What constitutes an unreasonable delay depends on 'the facts of the particular case.' (193).''

The judgment of the circuit court of Cook county is reversed and the cause is remanded for a new trial so that all of the facts can be adduced. When all of the evidence is heard, the question whether the note was presented to the defendant within a reasonable time will be for the jury unless the evidence is of such a character that all reasonable minds cannot draw different conclusions, when the question would be for the court to decide. *Murray v. Third Nat. Bank of St. Louis,* 234 Fed. 481.

The judgment of the circuit court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*